**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **American Airlines Federal Credit Union,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 C 599 |
| ) | Judge Ronald A. Guzmán |
| **Shaun Eck and Merrill Lynch, Pierce, Fenner & Smith, Incorporated,** ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, this case is dismissed without prejudice for lack of subject matter jurisdiction. Civil case terminated.

## STATEMENT

American Airlines Federal Credit Union ("AAFCU") is a federally-chartered credit union seeking to invoke this Court's diversity jurisdiction in its case against Shaun Eck and Merrill Lynch, Pierce, Fenner & Smith, Incorporated, which alleges state-law claims for breach of contract, misappropriation of trade secrets, unjust enrichment, tortious interference with business relationships and existing contracts, and conversion. "For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be 'complete,' meaning that no plaintiff may be a citizen of the same state as any defendant." *Snyder v. Wal-Mart Stores, Inc.*, No. 18 C 583, 2018 WL 1586246, at *5 (N.D. Ill. Apr. 2, 2018) (internal quotation marks and citation omitted). In its complaint, AAFCU alleges that it is a citizen of Texas, and because Defendants are citizens of Illinois, New York, and Delaware, complete diversity exists. (Pl.'s Br. Supp. Jurisdiction, Dkt. # 27, at 5-6.)

The Supreme Court held in *Bankers' Trust Co. v. Texas & Pacific Railway, Co.*, 241 U.S. 295, 309-10 (1916), that a "corporation chartered pursuant to an Act of Congress with activities in different states . . . [is] not a citizen of any state for diversity jurisdiction purposes." *Fed. Home Loan Bank of Chi. v. Banc of Am. Funding Corp.*, 760 F. Supp. 2d 807, 808-09 (N.D. Ill. 2011). Applying *Bankers' Trust* to the instant case, diversity jurisdiction is lacking as Plaintiff would not be considered a citizen of any state, and the Court would therefore be required to dismiss the case without prejudice for lack of subject matter jurisdiction. Additional analysis, however, is required for the reasons explained below.

While Congress eventually enacted a provision declaring that federally-chartered *savings*

*associations* are considered citizens for diversity jurisdiction purposes "only of the State in which such savings association has its home office," 12 U.S.C. § 1464(x),[1] it has not spoken on the citizenship of a federally-chartered credit union. Following in line with the rule articulated in *Bankers' Trust*, certain courts have concluded that "federal credit unions are not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship." *Parks Heritage Fed. Credit Union v. Fiserv Sols., Inc.*, No. 16-CV-7734 (KBF), 2017 WL 74280, at *4 (S.D.N.Y. Jan. 4, 2017) (citation and internal quotation marks omitted). Nevertheless, many courts recognize a limited exception to the general rule, which has become known as the "localization doctrine." *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, 57 F. Supp. 3d 589, 593 (E.D. Va. 2014) (noting that "[i]n 1956, an Oregon district court . . . judicially created what is now generally known as the 'localization doctrine,' extending diversity jurisdiction to federally chartered corporations by deeming such corporations citizens of states where their business was localized."). "[T]he Third Circuit became the first Court of Appeals to endorse the localization doctrine in *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453 (3d Cir. 1959)." *Id.*

Although the Seventh Circuit has not spoken on the citizenship of federally-chartered credit unions, it has acknowledged that with respect to federally-chartered corporations, "courts sometimes recognized an exception [to the rule established in *Bankers' Trust*] if activities were localized in one state." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 428 (7th Cir. 2009); *see also Fed. Home Loan Bank,* 760 F. Supp. 2d at 808-09 (rejecting argument that *Bankers' Trust* rule does not apply to a federal home loan bank, and with respect to localization doctrine, concluding that the "Bank's extensive outside-of-Illinois business activities in Wisconsin alone, as well as its other highly material nonlocalized activities . . . take it well out of the limited exception recognized in some cases for 'localized' federally chartered corporations").
In *Hukic,* the Seventh Circuit neither adopted nor expressed any opinion on the viability of the localization doctrine; nevertheless, the Court will, in the instant case, assess whether AAFCU's activities are localized in Texas, both because the localization doctrine appears to be widely accepted and, for the reasons discussed below, the Court finds that the exception does not apply based on the current record, so its application does not alter the result of the citizenship analysis.

In two filings supplementing its jurisdictional allegations, AAFCU asserts that its activities are localized in Texas, and thus it should be found to be a citizen of Texas for diversity jurisdiction purposes. In support, it cites the following facts:

- It is headquartered in Fort Worth, Texas, and all of its senior officers work from that office.
- All of its operations are directed from its Texas offices.
- Texas residents constitute its largest membership percentage, accounting

---

[1] If that provision applied here, then Plaintiff would be, as alleged, a citizen of Texas. Plaintiff, however, makes no argument that this provision applies or has any persuasive effect in the instant case, so the Court does not address the issue.

> for 30% or 84,959 out of 285,919 members.
> - Texas residents hold 40% or $2.3 billion of its $5.8 billion deposit balances.
> - Texas resident members hold 42.76% or $1.2 billion of the open loan balances of $2.8 billion.
> - 14 of its 33 branches are located in Texas.

(Pl.'s Am. Br. Supp. Jurisdiction, Dkt. # 32, at 1-3.)

While these facts support a finding that its principal place of business is in, and many of its members are from, Texas, and AAFCU's services are provided to Texas residents, they do not establish that the credit union is localized in Texas. Indeed, the facts show that AAFCU "conducts its activities over a widespread area." *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 653 (M.D. Pa. 1995) ("The test for federal corporations is not a comparison but an examination of whether or not the corporation conducts its activities over a widespread area. If so, then its activities are not localized.").

As an initial matter, AAFCU began in Illinois (not Texas) in 1936 when nine employees of Midway Airport met to establish the American Airlines Credit Union at the American Airlines headquarters in Chicago, Illinois. *See* Am. Airlines Fed. Credit Union Timeline (which can be viewed at https://ownerrewards.aacreditunion.org/american-airlines.federal-credit-union-timeline). It moved to LaGuardia Airport and was chartered by the state of New York in 1939 and did not move to Texas until the fall of 1979, over forty years after it was formed. *Id.*[2] AAFCU was federally chartered in 1982. *See* https://mapping.ncua.gov/SingleResult.aspx?ID=23957&IsCorpCU=0.

Moreover, its membership eligibility requirements are broad and not focused on Texas residents. As noted on its website:

> **Membership Eligibility**
>
> American Airlines Credit Union started more than 80 years ago, when a small group of American Airlines employees formed a financial institution dedicated to helping their colleagues. Today, American Airlines Credit Union is open to anyone working in the Air Transportation Industry* and their families.
>
> **What industry do we serve?**
>
> The Air Transportation Industry and their families.

---

[2] It is not evident from the record whether AAFCU ever received a charter from the State of Texas.

3

**Who is eligible for membership?**

- All active or retired employees of American Airlines, US Airways and Envoy.

- Employees who work directly in the air transportation industry such as:

    - Airline employees.

- Employees who work directly in administration, regulation or security of airports, airlines or air transportation, such as:

    - TSA, FAA and others.

- Employees of companies that have a strong dependency relationship with airlines or airports who work directly with:

    - Air transportation of freight, including freight forwarding for air transportation;
    - Air courier services, air passenger services, airport baggage handling;
    - Commercial airport janitorial services;
    - Commercial aircraft cleaning, maintenance, servicing, and repair services;
    - Commercial airport runway maintenance services; and
    - On-board airline food services.

- **Families**: Member-owners can sponsor membership for their spouse, children, parents, siblings, grandparents, grandchildren and permanent household members with same physical address.

*See* Become a Member/Eligibility (which can be viewed at https://www.aacreditunion.org/eligibility.aspx). The geographical breadth of its membership is apparent in AAFCU's acknowledgment that only 30% of its members are residents of Texas, with the remaining 70% of its members residing in the following states: Florida, New York, California, Oklahoma, Illinois, North Carolina, Arizona, Massachusetts, and a "few other states." (Young Decl., Dkt. # 32-1, ¶ 7.)

Moreover, all of the statistics and representations, both specifically provided to the Court and those that are publicly available, indicate that AAFCU is seeking to serve customers across the United States and establish itself as a nationwide entity. The home page on AAFCU's website allows individuals to apply for membership and VISA cards online, and touts providing its members access to 30,000 ATM locations and "close to 5,000 Shared Service Centers." *See* https://www.aacreditunion.org/home.aspx. Under a link on the home page named "Products and

Services," a further link to "CAARS.org" indicates under the "Promotions & Research" tab that in order "[t]o make your auto-buying experience a little easier, we've partnered with CUDL® AutoSMART™ and Enterprise Car Sales to provide you with easy to use online research resources." *See* CAARS.org, Promotions & Research (which can be viewed at https://www.aacreditunion.org/caars.aspx). In addition, under the link called "About AA Credit Union," AAFCU states that "[f]or our many airline industry members, we have branches conveniently located in most major U.S. airports. For the rest of the family, our partnerships with the CO-OP ATM Network® and the extensive CO-OP Shared Branch Network® provide easy and convenient nationwide access to members' accounts." *See* About AA Credit Union (which can be viewed at https://www.aacreditunion.org/about-aacreditunion.aspx).

It is clear that AAFCU's intent is to continue expanding its national presence. In a 2016 press release posted on its website, AAFCU acknowledged the nationwide celebration of its 80th anniversary, noting that it was holding "events at its flagship location along with American Airlines headquarters in Fort Worth, Texas, as well as all 45 of its branches across the country." *See* About AA Credit Union/Press Releases, "American Airlines Federal Credit Union Celebrates 80 Years with Nationwide Events In All 45 of its Branches" (which can be viewed at https://www.aacreditunion.org/press-celebrate80.aspx). The Letter from the Chief Executive Officer in AAFCU's 2015 Annual Report includes a statement that "[a]dditional new branches are planned for the Rio Building in Phoenix, the Training Center in Charlotte and the Integrated Operations Center in Fort Worth. These new additions are designed to broaden services to our member-owners in areas where they are most needed." *See* AAFCU 2015 Annual Report, Letter from the CEO, at 6 (which can be viewed at https://www.aacreditunion.org/pdf/annualreport2015.pdf). Thus, the fact that Texas residents currently account for almost 40% of the deposit balances and almost 43% of AAFCU's open loan balances does not alter this Court's conclusion.

The points identified above are not intended to represent an exhaustive list of relevant factors to be considered in the localization analysis;[3] they are, however, sufficient for the Court to find that AAFCU's activities are not localized in Texas. *See Parks Heritage Fed. Credit Union*, 2017 WL 74280, at *5 (finding credit union's activities not localized in New York even where most of its members were New York residents, where the credit union "maintain[ed] a variety of capabilities that permit even those members to use its financial services outside the

---

[3] "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (citation omitted). The Court provided AAFCU two opportunities to supplement its jurisdictional facts, and expressly stated that AAFCU "shall not be constrained by the [localization] factors the Court . . . listed in [its] order" directing additional briefing. (4/24/18 Order, Dkt. # 29.) AAFCU, however, did not go beyond the factors identified by the Court, presumably because they do not, from what the Court can tell, support a finding of localization in Texas. As a result, the Court looked to representations made by AAFCU on its own website and other publicly-available information in conducting its analysis.

state," including issuing Visa credit cards that could be used worldwide, maintaining an interactive website and mobile app, and providing access to a network of 60,000 ATMs worldwide). As noted by the *Parks Heritage* court, "many courts have held that federally chartered corporations with bases of operations in a particular state are nevertheless stateless, national citizens ineligible for diversity jurisdiction." *Id.* at *6 (citing *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 314 (E.D.N.Y. 2005) (finding federally-chartered bank not localized in Wisconsin, where it maintained its headquarters and all of its funds, because it solicited business online on a nationwide basis and maintained administrative offices in other states, and a majority of its customers were located outside Wisconsin); *Iceland Seafood Corp. v. Nat'l Consumer Coop. Bank*, 285 F. Supp. 2d 719, 725-26 (E.D. Va. 2003) (finding federally-chartered bank not localized in the District of Columbia, its principal place of business, because it made loans to entities in other states, secured collateral in other states, and maintained several branch offices in other states); *Little League Baseball*, 874 F. Supp. at 654-55 (finding Little League Baseball not localized in Pennsylvania where its principal offices were located because, among other things, it operated leagues, tournaments, and regional centers outside that state); *Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 521-22 (C.D. Cal. 1983) (finding U.S. Olympic Committee not localized in Colorado, where it conducted its daily operations, because it had broad authority to conduct business nationwide)).

Thus, because the Court concludes that AAFCU is a national citizen and not a citizen of any state, complete diversity among the parties cannot be established, and the case is therefore dismissed without prejudice for lack of subject matter jurisdiction.

**Date:** May 23, 2018

**Ronald A. Guzmán**
**United States District Judge**

6